## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JEAN-PAUL WEG., LLC, d/b/a THE WINE CELLARAGE and LARS NEUBOHN, | : : : | **Civil Action No. 19-14716 (JXN) (LDW)** |
| Plaintiffs, | : : | |
| v. | : : | **OPINION** |
| JAMES GRAZIANO, Director of the New Jersey Division of Alcoholic Beverage Control, and MATTHEW J. PLATKIN, Attorney General of New Jersey, | : : : : : | |
| Defendants, | : : | |
| and | : | |
| FEDWAY ASSOCIATES, INC., ALLIED BEVERAGE GROUP, INC., OPICI FAMILY DISTRIBUTING and NEW JERSEY LIQUOR STORE ALLIANCE, | : : : : | |
| Intervenors-Defendants. | : : | |

**NEALS**, District Judge:

This matter comes before the Court on four motions for summary judgment filed pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1: (1) Plaintiffs Jean-Paul Weg., LLC, d/b/a The Wine Cellarage ("The Wine Cellarage") and Lars Neubohn's ("Neubohn") (collectively, "Plaintiffs") motion for summary judgment (ECF No. 102); (2) Intervenor-Defendants Allied Beverage, Group, Inc. ("Allied") and Opici Family Distributing's (collectively, the "Allied Defendants") opposition to Plaintiffs' motion for summary judgment and cross-motion for summary judgment (ECF Nos. 110-11); (3) Intervenor-Defendant Fedway Associates, Inc.'s ("Fedway") opposition to Plaintiffs' motion for summary judgment and cross-motion for summary judgment (ECF No. 112); and (4) Defendants James Graziano

and Matthew J. Platkin's (together, the "State Defendants") opposition to Plaintiffs' motion for summary judgment and cross-motion for summary judgment (ECF No. 114). Intervenor-Defendant New Jersey Liquor Store Alliance ("New Jersey Liquor") filed opposition to Plaintiffs' motion for summary judgment and joined in the State Defendants' cross-motion, as well as Allied Defendants' and Fedway's (together, the "Wholesaler Defendants") cross-motions for summary judgment (ECF No. 113). Plaintiffs filed a combined response/reply brief (ECF No. 121). The State Defendants and Wholesaler Defendants (together, the "Defendants") filed replies (ECF Nos. 131-33). Jurisdiction is proper pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3). Venue is proper pursuant to 28 U.S.C. § 1391.

The Court has carefully considered the parties' submissions and decides the matter without oral argument under Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, Plaintiffs' motion for summary judgment (ECF No. 102) is **DENIED**, Allied Defendants' cross-motion for summary judgment (ECF Nos. 110-11) is **DENIED as moot**, Fedway's cross-motion for summary judgment (ECF No. 112) is **DENIED as moot**, the State Defendants' cross-motion for summary judgment (ECF No. 114) is **GRANTED**, and Plaintiffs' Commerce Clause claim (Count One) against the State Defendants is **DISMISSED** *with prejudice*. The Court does not award costs, expenses, or attorneys' fees to any party.

## I.     BACKGROUND AND PROCEDURAL HISTORY[1]

This is a 42 U.S.C. § 1983 civil rights action. Plaintiffs allege that New Jersey's statutes and regulations governing the sale and distribution of alcoholic beverages commonly referred to as New Jersey's three-tier system (the "New Jersey System"), is unconstitutional because it "discriminates against wine retailers located outside New Jersey who are engaged in interstate commerce[.]" Plaintiffs' Third

---

[1] For the sake of brevity, all citations to the parties' Rule 56.1 statements incorporate the evidentiary citations contained therein.

Amended Complaint (ECF No. 83) (the "Amended Complaint"), at p. 2.  In Count One[2] of the Amended Complaint, Plaintiffs allege that the New Jersey System "and related rules, practices, and regulations as applied[,] . . . prohibit out-of-state wine retailer[s] like The Wine Cellarage from taking telephone and internet wine orders from New Jersey consumers" and "sell[ing], ship[ping], and deliver[ing] wine" directly to consumers "from their premises located out of the state."  Am. Compl., at pp. 1-2.  Plaintiffs seek a declaratory judgment that the New Jersey System is "unconstitutional as a violation of the Commerce Clause of the United States Constitution[,]" and an injunction prohibiting the State Defendants from enforcing the New Jersey System against out-of-state wine retailers like Plaintiffs, among other relief.  *Id.* at pp. 7-8.  New Jersey Liquor and Defendants claim that the New Jersey System is both constitutional and enforceable.  *See, gen.,* N.J. Liquor's Br.; Defs.' Brs.  The relevant facts follow.

Plaintiff Neubohn is "the president of Vindemia, Inc. [("Vindemia")], which is the sole member of" The Wine Cellarage.  State Defendants' Responsive Statement of Undisputed Material Facts and Counterstatement of Undisputed Material Facts (ECF No. 114-2) (the "SDRSOF")[3] ¶ 1; Plaintiffs' Responsive Statement of Undisputed Material Facts to State Defendants (ECF No. 121-2) (the "PRSOFSD") ¶ 1.  Vindemia "holds a warehouse permit from the New York State Liquor Authority" that "allows Vindemia to operate a warehouse for the storage of alcoholic beverages in New York."  SDRSOF ¶ 2; PRSOFSD ¶ 2.  The Wine Cellarage "holds a package store license from the New York State Liquor Authority" that grants The Wine Cellarage "the right to sell alcoholic beverages direct to consumers for off-site consumption."  SDRSOF ¶ 3; PRSOFSD ¶ 3.

The Wine Cellarage "is a New York limited liability company that operates a wine retail store in Bronx, New York, that is owned and operated by" Neubohn.  Plaintiffs' Statement of Undisputed Material

---

[2] Plaintiffs "are no longer pursuing" their Privileges and Immunities claim (Count Two) and "will not do so in the future regardless of the outcome of their Commerce Clause claim."  Pls.' Mem. of Law, at 2.

[3] State Defendants' Responsive Statement of Undisputed Material Facts at pp. 1-21 and Counterstatement of Undisputed Material Facts at pp. 21-34.

Facts (ECF No. 102-2) (the "PSOF") ¶ 1; Wholesaler Defendants' Responsive Statement of Undisputed Facts (ECF No. 112-5) (the "WDRSOF") ¶ 1; New Jersey Liquor's Responsive Statement of Undisputed Material Facts (ECF No, 113-1) (the "NJLRSOF") ¶ 1; SDRSOF ¶ 1. The "Wine Cellarage has a brick-and-mortar store in Bronx, New York, where customers can go to purchase wine." SDRSOF ¶ 4; PRSOFSD ¶ 4. The "Wine Cellarage does not have any stores outside of New York." SDRSOF ¶ 4; PRSOFSD ¶ 4. The "Wine Cellarage is required to have a premises in New York for licensure." SDRSOF ¶ 5; Ex. B of Kimberley M. Wilson's December 6, 2021, Certification (ECF No. 114-3) (the "Wilson Decl."), Neubohn's Feb. 23, 2021, deposition transcript as Corporate Designee of The Wine Cellarage (ECF No. 114-5) (the "Neubohn Dep."), at T40:13-17. About 20% of The Wine Cellarage's wine inventory is "purchase[d] from private wine collections" and 80% from New York licensed wholesalers. SDRSOF ¶¶ 9-11; PRSOFSD ¶¶ 9-11.

The Wine Cellarage "engages in internet wine sales and has customers" throughout the United States, including at least one from New Jersey. PSOF ¶ 2; WDRSOF ¶ 2; NJLRSOF ¶ 2; SDRSOF ¶ 2. In New Jersey, customers "either pick up their wine purchases at The Wine Cellarage or the wine purchases are shipped to the customer through an intermediary shipper" called 24/7. SDRSOF ¶¶ 18-19, 21; PRSOFSD ¶¶ 18-19, 21. The Wine Cellarage's "use of an intermediary shipper" is described as a "work around" when "shipping wine across state lines." SDRSOF ¶ 20; PRSOFSD ¶ 20 (internal quotations omitted). Neither The Wine Cellarage nor Vindemia pay New Jersey sales taxes, or "New Jersey alcohol beverage tax on wine sales delivered via an intermediary shipper." SDRSOF ¶¶ 22, 25; PRSOFSD ¶¶ 22, 25. Additionally, neither pay "use tax[es]" on wine sales delivered by intermediary shippers. SDRSOF ¶¶ 23-24; PRSOFSD ¶¶ 23-24.

To prevent selling alcohol to minors, The Wine Cellarage "(i) ask[s] customers to represent at sign-up what their age is . . . and (ii) any shipment that The Wine Cellarage sends out by common carrier

'goes out as an adult signature.'"  SDRSOF ¶ 32; PRSOFSD ¶ 32.  If customers appear in person and "look to be of age," Plaintiffs do not "card them" or ask the customer to provide identification.  SDRSOF ¶ 34; Neubohn Dep., at T91:4-8, T100:24-T101:11.  Indeed, The Wine Cellarage's employees do "not ask for identification" when a "customer looks well into their adult age[.]" SDRSOF ¶ 35; PRSOFSD ¶ 35.  According to Neubohn, The Wine Cellarage "sell[s] a pretty expensive product . . . so [minors attempting to purchase alcohol] hasn't been a problem . . . because kids aren't buying what we're selling." Neubohn Dep., at T101:12-18.

Reportedly, "[f]orty-five states allow some form of direct-to-consumer wine shipping."  PSOF ¶ 26; WDRSOF ¶ 26; NJLRSOF ¶ 26; SDRSOF ¶ 26.  At least 14 jurisdictions allow retailers to ship directly to consumers. PSOF ¶ 26; WDRSOF ¶ 26; NJLRSOF ¶ 26; SDRSOF ¶ 26.  "Most regulate those shipments by requiring the shipper to obtain a direct-shipping permit, limit the amount of wine they ship, remit taxes, consent to jurisdiction and audits, label packages as containing alcohol, and use a state-approved carrier who verified age on delivery." PSOF ¶ 26; WDRSOF ¶ 26; NJLRSOF ¶ 26; SDRSOF ¶ 26.

The New Jersey System encompasses a wide-ranging licensing regime related to the sale, consumption, and distribution of alcoholic beverages, which does not allow an unlicensed out-of-state wine retailer to sell or deliver wine directly to New Jersey consumers.  SDRSOF ¶ 60; PRSOFSD ¶ 60. The New Jersey System requires that potential licensees obtain : (1) a "plenary retail consumption license" that permits retailers to sell alcoholic beverages "by the glass" on "a licensed premise" and "sell alcoholic beverages in original containers for consumption off the licensed premises[;]" or (2) a "plenary retail distribution license" that is intended for "a package or retail liquor store" to sell alcoholic beverages "in original containers for 'off-premises consumption.'"  SDRSOF ¶¶ 47, 49; Ex. F of Wilson Decl., Tia Johnson's June 8, 2021, deposition transcript (ECF No. 114-7) (the "Johnson Dep."), at T7:11-14, T7:18-

21, T7:25-8:1.  Plenary retail distribution licenses also allow licensees to sell alcoholic beverages online and "ship it by common carrier . . . without the customer appearing in person at the store."  PSOF ¶ 6; WDRSOF ¶ 6; NJLRSOF ¶ 6; SDRSOF ¶ 6.  "Plenary retail licenses" are commonly referred to as "Class C" licenses.  SDRSOF ¶ 50; PRSOFSD ¶ 50; Andrew R. Sapolnick's December 6, 2021, Declaration (ECF No. 114-13) (the "Sapolnick Decl."), at ¶ 8.

The Division of Alcoholic Beverage Control or "ABC" and "municipal issuing authorities employ a comprehensive review and screening process for retail-license applicants . . . ."  Wholesaler Defendants' Statement of Undisputed Material Facts (ECF No. 111-3) (the "WDSOF") ¶ 49; Plaintiffs Responsive Statement of Undisputed Material Facts to Wholesaler Defendants (ECF No. 121-3) (the "PRSOFWD") ¶ 49.  Potential licensees are fingerprinted and undergo background checks.  WDSOF ¶ 49; PRSOFWD ¶ 49.  As a condition of licensure, licensees are also "on notice that" licensed premises are "subjected to" searches.  SDRSOF ¶ 75; PRSOFSD ¶ 75; WDSOF ¶ 52; PRSOFWD ¶ 52; Ex. G of Wilson Decl., Andrew Sapolnick's June 8, 2021, deposition transcript (ECF No. 114-8) (the "Sapolnick Dep."), at T12:2-T14:13.  Once submitted, the municipality forwards a copy of the application to the "State[,]" where the application undergoes an additional review.  SDRSOF ¶ 52; Johnson Dep., at T6:18-23.  The municipality completes an on-site inspection of the premises and, if satisfactory, "approves the application by resolution."  SDRSOF ¶¶ 52-53; Johnson Dep., at T6:18-23.  The ABC then provides the municipality a "license certificate for the licensee."  SDRSOF ¶ 56; PRSOFSD ¶ 56.

In addition to obtaining a plenary retail license, licensees agree to purchase alcoholic beverages from licensed New Jersey wholesalers and be "physically located" in New Jersey.  SDRSOF ¶ 65; Johnson Dep., at T8:21-23; Sapolnick Decl., at ¶ 8; PSOF ¶ 6; WDRSOF ¶ 6; NJLRSOF ¶ 6; SDRSOF ¶ 6.  If an alcoholic beverage is not "sourced" from a state wholesaler, the licensee cannot sell it because all alcoholic beverages "sold in New Jersey must be brand registered with the" ABC.  SDRSOF ¶¶ 41, 45; Sapolnick

Decl., at ¶¶ 8, 41.  Certain alcoholic beverages, however, are "banned," such as "alcohol-infused energy drinks" and "powdered or crystalline alcohol." SDRSOF ¶¶ 42-43; Sapolnick Decl., at ¶ 15.  Having a physical presence means that unless an out-of-state retailer "open[s] a store in New Jersey[,]" it cannot sell and deliver wine directly to New Jersey consumers.  SDRSOF ¶ 67; PRSOFSD ¶ 67.

While a physical presence "is required to obtain a Class C" or plenary retail license, there is no residency requirement to obtain such a license.  NJLRSOF ¶ 6; SDRSOF ¶¶ 6[4], 58; Johnson Dep., at T9:24-10:1; Sapolnick Dep., at T17:7-9.  To be sure, New Jersey "do[es] not deny retail licenses based on the residency of applicants."  WDRSOF ¶ 4; NJLRSOF ¶ 4; SDRSOF ¶ 4[5].  The purpose of requiring a physical presence is to allow the ABC to "efficiently provide regulatory oversight of New Jersey's licensees" by managing alcohol use in the State.  SDRSOF ¶ 72; PRSOFSD ¶ 72.  Reportedly, excessive alcohol use "accounts for 1 of 10 deaths among work-age adults" and "95,000 deaths" annually nation-wide.  WDSOF ¶¶ 43-44; PRSOFWD ¶¶ 43-44.

The State of New Jersey, through the ABC and related agencies, screen potential licensees, perform on-site inspections, and refer and/or assist in the prosecutions of licensing violations.  "ABC investigators work undercover, watching how a licensee operates without announcing their presence."  SDRSOF ¶ 82; PRSOFSD ¶ 82.  "[I]nvestigators assess whether the licensee is selling alcohol to intoxicated people[,]" or to minors.  SDRSOF ¶ 82; PRSOFSD ¶ 82.  Investigators also "visit retail licensees to conduct 'decoy' operations involving minors who, under ABC supervision, attempt to purchase alcohol."  WDSOF ¶ 53; PRSOFWD ¶ 53.  ABC investigations have "uncovered undisclosed

[4] While the State Defendants' and New Jersey Liquor's responses read Plaintiffs' statement of material fact is "[d]isputed in part, to the extent an in-state business presence is required[,]" the defendants qualify their responses by stating "but there is no residency requirement."

[5] Defendants cite Ex. 2 of James A. Tanford's Nov. 4, 2021, Certification, State Defs.' Resp. to Plaintiffs' First Request for Admission No. 2 (ECF No. 102-5), which reads in relevant part that "Defendants do not deny retail licenses based on the residency of applicants."

interests" in licensed premises, including interests from organized crime.  SDRSOF ¶¶ 85-86; PRSOFSD ¶¶ 85-86.

Plaintiffs, more specifically The Wine Cellerage, cannot legally sell or deliver wine in New Jersey because it: (i) does not possess a plenary retail license; (ii) purchases wine from private wine collections and New York licensed wholesalers; and (iii) has no intention of opening a store in New Jersey.  SDRSOF ¶¶ 9-11, 13, 69; PRSOFSD ¶¶ 9-11, 13, 69.  Plaintiffs seek to sell and deliver wine that was neither purchased from a licensed New Jersey wholesaler nor flows through the New Jersey System (*see* WDSOF ¶ 7; PRSOFWD ¶ 7), and through this action seek a declaratory judgment that the New Jersey System is unconstitutional under the Commerce Clause and an injunction against enforcement of the New Jersey System.  Am. Compl., at pp. 2, 7-8.

## II.    **LEGAL STANDARD**

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996).  A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it can "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Disputes over "irrelevant or unnecessary" facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248 (citation omitted).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (citation and internal quotations omitted).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 322 (citations omitted). If the movant satisfies its initial burden, the nonmoving party cannot rest upon mere allegations in the pleadings to withstand summary judgment; rather, the nonmoving party "must counter with specific facts which demonstrate that there exists a genuine issue for trial." *Orson, Inc.*, 79 F.3d at 1366 (citation omitted). Specifically, the nonmoving party "must make a showing sufficient to establish the existence of each element of his case on which he will bear the burden of proof at trial." *Huang v. BP Amoco Corp*, 271 F.3d 560, 564 (3d Cir. 2001) (citation omitted). Thus, "a mere 'scintilla of evidence' in the nonmovant's favor" is insufficient to "create a genuine issue of fact." *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 666 (3d Cir. 2016) (citation omitted). Ultimately, it is not the Court's role to make findings of fact, but to analyze the facts presented and determine if a reasonable jury could return a verdict for the nonmoving party. *See Brooks v. Kyler*, 204 F.3d 102, 105 n.5 (3d Cir. 2000) (citations omitted).

## III.  <u>DISCUSSION</u>

Whether the New Jersey System discriminates against interstate commerce and, if so, whether the State is justified in so doing are legal issues for the Court to decide. Because there does not appear to be an issue as to any material fact, the Court therefore decides the parties' entitlement to summary judgment as a matter of law.[6] *See Chin v. Max One Retail LLC*, No. 20-2928, 2023 WL 2207393, at *2 (D.N.J. Feb. 23, 2023) (Deciding judgment as a matter of law issue after finding there were no material facts in dispute). Plaintiffs contend that the New Jersey System, and the provisions therein, violate the Commerce Clause because they are not valid exercises of the State's power under the Twenty-first Amendment. The Court disagrees.

---

[6] Defendants do not dispute that Plaintiffs have standing to bring this action. Pls.' Mem. of Law, at 4-5.

Preliminarily, the parties disagree on the appropriate test to apply when analyzing whether New Jersey's alcoholic beverage laws violate the Commerce Clause. *See, gen.,* Pls.' Mem. of Law; N.J. Liquor's Br.; Defs.' Brs. Accordingly, the Court will provide clarification.

### A.     Challenges to State Laws Under the Dormant Commerce Clause

The United States Constitution provides that "Congress shall have Power . . . To regulate Commerce . . . among the several States . . . ." U.S. CONST. art. I, § 8, cl. 3. To "prevent a State from retreating into the economic isolation . . . that had plagued relations among the . . . States" (*see Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 338 (2008)), courts "have interpreted the Commerce Clause to contain a 'negative' aspect." *American Marine Rail NJ, LLC v. City of Bayonne*, 289 F.Supp.2d 569, 578 (D.N.J. 2003). "This doctrine, referred to as the dormant Commerce Clause, limits a state's power to regulate interstate commerce in the absence of authority from the Congress." *Id.* at 578. First mentioned in *Gibbons v. Ogden*, 22 U.S. 1 (1824), the dormant Commerce Clause is "deeply rooted in our case law." *Tenn. Wine and Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449, 2460 (2019). Because the "Commerce Clause by its own force restricts state protectionism" (*see Tenn. Wine*, 139 S. Ct. at 2461), the dormant Commerce Clause ensures that states do not protect in-state businesses from out-of-state competition. *Davis*, 553 U.S. at 337-38.

To establish a dormant Commerce Clause violation, a plaintiff must prove that the "challenged law discriminates against interstate commerce." *Id.* at 338 (citations omitted). Discrimination in this context "means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 331 (2007) (citations omitted). A "discriminatory law is virtually *per se* invalid" and "will survive only if it advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives . . . ." *Davis*, 553 U.S. at 338 (citations and internal quotations omitted).

While this analysis is generally appropriate in most cases, § 2 of the Twenty-first Amendment to the U.S. Constitution requires that courts "engage in a different inquiry" when facing challenges to a state's alcoholic beverage laws.  *Tenn. Wine*, 139 S. Ct. at 2474.

> **B.**     **Challenges to State Alcoholic Beverage Laws under the Dormant Commerce Clause since the Twenty-first Amendment**

For a time, and beginning in 1920, alcoholic beverages were prohibited in the United States.  *See* U.S. CONST. amend. XVIII, § 1 ("After one year from the ratification of this article the manufacture, sale, or transportation of intoxicating liquors within, the importation thereof into, or the exportation thereof from the United States and all territory subject to the jurisdiction thereof for beverage purposes is hereby prohibited."); *see also State of Rhode Island v. Palmer*, 253 U.S. 350, 385 (1920).  Following Prohibition, the Twenty-first Amendment repealed the Eighteenth Amendment (*see* U.S. CONST. amend. XXI, § 1) and, thus, gave the states the power to regulate alcoholic beverages within their borders.  *See id.* at § 2 (The "transportation or importation into any State . . . or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited.").  Under the Twenty-first Amendment, states have "virtually complete control over the importation and sale of liquor and the structure of the liquor distribution system."  *North Dakota v. United States*, 495 U.S. 423, 431 (1990) (citations and internal quotations omitted).

In 2005, the United States Supreme Court in *Granholm v. Heald* considered whether the Twenty-first Amendment protected state laws that regulated the sale and delivery of alcoholic beverages from constitutional challenge under the dormant Commerce Clause.  544 U.S. 460, 488 (2005).  In finding that such laws must pass constitutional muster, the court in *Granholm* enunciated the test referred herein as the "*Granholm* Test," that courts apply when analyzing challenges to state alcoholic beverage laws.

In *Granholm*, the court reviewed Michigan's and New York's "regulatory schemes" on the limited question of whether a "State's regulatory scheme that permits in-state wineries directly to ship alcohol to

11

consumers but restricts the ability of out-of-state wineries to do so[,] violates the dormant Commerce Clause in light of § 2 of the Twenty-first Amendment . . . ."  *Granholm*, 544 U.S. at 465, 66, 71.  The court found that New York's in-state physical presence requirements that out-of-state wineries "open a branch office and warehouse in New York" were "additional steps that drive up the cost of their wine[,]" and were therefore, discriminatory.  *Granholm*, 544 U.S. at 474-75.  The court further noted that New York's in-state presence requirement "runs contrary to our admonition that States cannot require an out-of-state firm to become a resident in order to compete on equal terms."  *Id.* at 475 (citations and internal quotations omitted).   The New York law further provided that even after the out-of-state winery "establish[ed] the requisite branch office and warehouse in New York[,]" they were "still ineligible for a 'farm winery' license," which "provides the most direct means of shipping to New York consumers." *Ibid.* (citations omitted).  Out-of-state wineries could only "apply for a commercial winery license[,]" which requires a "separate certificate from the state liquor authority authorizing direct shipments to consumers[,]" and for out-of-state wineries, there is the "additional requirement of maintaining a distribution operation in New York."  *Id.* (citations omitted).

In explaining the *Granholm* Test, the Court provided that once a state alcoholic beverage law is found to discriminate against interstate commerce, the court then considers whether the state law "advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives."  *Id.* at 489 (citations omitted).  Such discrimination is only "justif[ied]" by "concrete evidence[,]" which requires the "clearest showing" because "Commerce Clause cases demand more than mere speculation to support discrimination against out-of-state goods."  *Id.* at 490, 92 (citations and internal quotations omitted).  Indeed, courts uphold state alcoholic beverage laws that discriminate against interstate commerce "only after finding, based on concrete evidence, that a State's nondiscriminatory alternatives will prove unworkable."  *Id.* at 492-93.

The Third Circuit has once applied the *Granholm* Test in a case involving a challenge to a state's alcoholic beverage laws—*Freeman v. Corzine*, 629 F.3d 146, 151 (2010).[7]  In *Freeman*, plaintiffs sued the State of New Jersey under 42 U.S.C. § 1983, alleging that "several aspects of" the New Jersey system contravened the *Granholm* Test's nondiscrimination principle in violation of the dormant Commerce Clause.  *Freeman*, 629 F.3d at 151.[8]  Because *Freeman* is the only Third Circuit case to apply the *Granholm* Test in an analogous case, the Court will accordingly discuss the relevant facts here.

In *Freeman*, "[t]he first two statutory provisions at issue involve[d] privileges relating to the sale of wine to consumers and retailers that are afforded to wineries that obtain New Jersey plenary or farm winery licenses, but not to wineries lacking such licenses." *Id.* at 151-52.[9]  Further, "[h]olders of either type of license (in-state wineries) may sell their wines at retail to consumers at the winery and at six salesrooms apart from the winery premises." *Id.* at 152 (citations and internal quotations omitted).  "In-state wineries are also permitted to sell their wines to wholesalers and retailers." *Ibid.* (citations and internal quotations omitted).  "Wineries that do not hold either a plenary or a farm winery license (out-of-state wineries), by contrast, must funnel their wines through the three-tier system by selling to wholesalers."[10] *Ibid.*

---

[7] In *Freeman v. McGreevey*, No. 3-3140, 2006 WL 8423004, at *1-2 (D.N.J. June 26, 2006), the district court denied motions to dismiss and for judgment on the pleadings "as premature" to give *Granholm*, as well as New Jersey's "recently amended statutory scheme" time to take effect.

[8] Like here, Allied and Fedway intervened on behalf of the State of New Jersey defendants.

[9] The plaintiffs "also challeng[ed] two aspects of New Jersey's rules regarding the personal importation of wine . . . both the one-gallon cap on importation and the reciprocity provision prohibiting importation of wine from states that bar the entry of New Jersey wine." *Freeman*, 629. F.3d at 152 (citing N.J.S.A. 33:1–2(a)).  Additionally, Plaintiffs sought to "invalidate New Jersey's ban on direct shipments of wine from wineries to consumers via common carrier." *Ibid.*  Having reviewed the rules, the court noted that "[w]hen plaintiffs filed suit in 2003," the Alcoholic Beverage Control Act of 1933, L. 1933, c.436 (codified at N.J.S.A. §§ 33:1 to 33:43) (the "ABC Law")), "allowed in-state, but not out-of-state, wineries to make such shipments. *Ibid.* "[I]n anticipation of *Granholm*, which invalidated similar" laws in Michigan and New York, the Legislature "rescinded this privilege, resulting in a ban on all direct shipments of wine from producers to New Jersey residents." *Id.* at 152–53.

[10] "Plenary licenses may be obtained by producers that grow and cultivate grapes ... on at least three acres on, or adjacent to, the winery premises, but only if the wine is produced, blended, fortified, or treated by the licensee on its licensed premises situated in the State of New Jersey." *Id.* at 152 (quoting N.J.S.A. 33:1–10(2a)) (internal quotations and brackets omitted).  "Farm winery licenses, meanwhile, are available to wineries which produce less than 50,000 gallons of wine per year and which, for the first five years of the operation of the winery, produce wine that is from at least 51% grapes or fruit grown in the State of New Jersey." *Id.* at 152 (quoting N.J.S.A. 33:1–10(2b)) (internal quotations omitted).

13

There, the court pronounced that "any statute that discriminates against interstate commerce on its face or in effect is . . . subject to heightened scrutiny." *Id.* at 158 (citations and internal quotations omitted). Though worded slightly differently, "heightened scrutiny" essentially refers to the *Granholm* Test. *Compare Granholm*, 544 U.S. at 489 (Once the plaintiff shows that the state law is discriminatory, courts consider whether the law "*advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives.*") (citations omitted) (emphasis added); *Freeman*, 629 F.3d at 158 (Once the plaintiff shows that the state law is discriminatory, the state "must demonstrate[:] (1) that the statute *serves* a legitimate local *interest*, and (2) *that this purpose could not be served as well* by *available* nondiscriminatory means.") (citations omitted) (emphasis added).[11]  If the plaintiff fails to show that the state law is discriminatory, courts "instead use the balancing test set forth in" *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970) (holding where state statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits). *Id.* at 158 (internal brackets omitted).  If the plaintiff meets its burden, however, then the court considers whether the State has shown that "the discrimination is demonstrably justified[.]" *Ibid.* (citations and internal quotations omitted).

Relying on *Granholm*, the court in *Freeman* reiterated that "state laws violate the Commerce Clause if they mandate differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Id.* at 158 (quoting *Granholm,* 544 U.S. at 472 (citations omitted)). Further, that § 2 of the Twenty-first Amendment "does not allow States to regulate the direct shipment of wine on terms that discriminate in favor of in-state producers . . . and that straightforward attempts to

---

[11] The court also noted that discriminatory state laws are "subject to strict scrutiny[.]" *Id.* at 159-60, 62.  As applied in *Freeman*, strict scrutiny does not refer to the strict scrutiny test utilized in Fourteenth Amendment cases (*see Doe ex rel. Doe v. Lower Merion School Dist.*, 665 F.3d 524 (2011)), but rather the *Granholm* Test.

discriminate in favor of local producers are not saved by the Twenty-first Amendment[.]" *Id.* at 158 (citations and internal quotations omitted).  Additionally, that "the mere fact of nonresidence should not foreclose a producer in one State from access to markets in other States."  *Ibid.* (citation and internal brackets omitted).  "In particular, when all out-of-state wine, but not all instate wine, must pass through an in-state wholesaler and retailer before reaching consumers, the discriminatory character of a system is obvious."  *Id.* at 159 (citation and internal quotations and brackets omitted).  "Thus, direct and indirect methods of subjecting out-of-state wineries, but not local ones, to the three-tier system contravene the dormant Commerce Clause."  *Id.* at 159 (citation and internal quotations omitted).

Relevant here, the court found the statutory provisions "facially discriminatory against interstate commerce," (*see id.* at 160), which allowed only in-state wineries to sell directly to retailers and consumers, thereby "skip[ping] the first two tiers—wholesalers and retailers—while out-of-state wineries must involve both of these tiers in order for their wine to reach consumers." *Id.* at 159.  Also, that licensing could not adequately address the facial discrimination because an out-of-state winery would still be subject to two additional tiers of the three-tier system that in-state wineries are not.  *Ibid.*  Ultimately, the court determined that the pertinent issue was whether the New Jersey's statutory scheme deprives wineries "of their right to have access to the markets of other States on equal terms."  *Granholm,* 544 U.S. at 473.

Post *Freeman*, the United States Supreme Court revisited the *Granholm* Test in *Tennessee Wine and Spirits Retailers Association*, wherein, the Court considered whether a state law "impos[ing] demanding durational-residency requirements on all individuals and businesses seeking to obtain or renew a license to operate a liquor store" violated the Commerce Clause.  139 S. Ct. 2449, 2456 (2019).[12]  The Court clarified its analysis in *Granholm*, holding that "a state law that discriminates against out-of-state

---

[12] The three Third Circuit cases that applied *Tennessee Wine* did so in connection to state laws unrelated to alcoholic beverages. *See Owner Operator Indep. Drivers Ass'n, Inc. v. Pa. Tpk. Comm'n,* 934 F.3d 283 (3d Cir. 2019); *Mech. Contractors Ass'n of N.J., Inc. v. State of New Jersey,* 541 F.Supp.3d 477 (D.N.J. 2021); *N.J. Staffing Alliance v. Fais,* No. 23-2494, 2023 WL 4760464 (D.N.J. July 26, 2023).

goods or nonresident economic actors" must be "narrowly tailored to advance a legitimate local purpose." *Tenn. Wine*, 139 S. Ct. at 2461 (citations omitted). Further, that the challenged requirement must be justified as a "public health or safety measure or on some other legitimate nonprotectionist ground." *Id.* at 2474. This is demonstrated by "concrete evidence" that the law "actually promotes public health or safety[,]" or "evidence that nondiscriminatory alternatives would be insufficient to further those interests." *Ibid.* (citations omitted). The law must also be "an essential feature of a three-tiered scheme[.]" *Id.* at 2471.

Despite *Granholm*, *Freeman*, and *Tennessee Wine* not addressing the issue, the Wholesaler Defendants here rely on cases in sister jurisdictions to contend that before analyzing whether the New Jersey System's provisions are discriminatory, the Court must first consider whether out-of-state wine retailers like Plaintiffs and in-state wine retailers are "similarly situated[.]" *See* Fedway's Mem. of Law, at 2; *see also* Allied Defs.' Mem. of Law, at 2-3. The Wholesaler Defendants argue in part that Plaintiffs and in-state wine retailers are not similarly situated because Plaintiffs would "gain[] privileges that New Jersey retailers lack" if not subject to the New Jersey System. Fedway's Mem. of Law, at 2. In response, Plaintiffs cite *Gen. Motors v. Tracy*, 519 U.S. 278, 298-99 (1997) and *Wal-Mart Stores, Inc. v. Texas ABC*, 935 F.3d 362, 376 (5th Cir. 2019), and assert that "[i]n-state and out-of-state companies selling the same product are similarly situated." Pls.' Resp./Reply Br. at 5. *Gen. Motors* is distinguishable because it did not apply the *Granholm* Test and concerned a challenge to the State of Ohio's natural gas taxes, and *Wal-Mart Stores, Inc.,* is a Fifth Circuit case that was withdrawn and superseded on rehearing. *See Wal-Mart Stores, Inc. v. Texas ABC*, 945 F.3d 206 (5th Cir. 2019). Here, the Court concludes that it must abide by the applicable precedential authorities—*Granholm*, *Freeman*, and *Tennessee Wine*—none of which directed that courts on these facts first determine whether in-state and out-of-state entities are similarly situated before considering whether a state's alcoholic beverage laws are discriminatory.

The parties request that the Court consider further authority, which the Court will address in turn. First, the State Defendants proposed supplemental authority in *Block v. Canepa*, No. 20-3686, slip op., 2022 WL 4133221 (S.D. Ohio Sept. 12, 2022) (ECF No. 141) (the "State Defs.' Letter").[13]  The court in *Block* "granted summary judgment to Ohio's attorney general . . . and denied summary judgment to plaintiffs (an out-of-state wine retailer with no permit or license from the Ohio Division of Liquor Control[)] . . . and upheld the constitutionality of laws that restrict out-of-state retailers from shipping wine directly to in-state consumers." State Defs.' Letter, at pp. 1-2 (internal quotations omitted).  Besides being a case in the Southern District of Ohio, the relevant holding in *Block* was reversed and remanded on appeal.  *See Block v. Canepa*, 2023 WL 4540523 (6th Cir. July 14, 2023) (directing the district court on remand to consider "whether the challenged statues (1) can be justified as a public health or safety measure or on some other legitimate nonprotectionist ground, and whether (2) their predominant effect is the protection of public health or safety, rather than protectionism.") (citing *Tenn. Wine*, 139 S. Ct. at 2474) (internal quotations omitted)).[14]  Thus, the Court will not rely upon *Block*.

Next, the State Defendants request that the Court consider *Anvar v. Dwyer*, No. 19-523, 2022 WL 4552047 (D.R.I. Sept. 29, 2022), a First Circuit case that applied the *Granholm* Test to a challenge to the State of Rhode Island's alcoholic beverage laws. That court "granted summary judgment to state defendants and . . . denied summary judgment to plaintiffs . . . and upheld the constitutionality of laws restricting out-of-state retailers from shipping wine directly to in-state consumers." (ECF No. 143).[15]  The regulatory scheme at issue also had similar requirements to the New Jersey System, including requiring out-of-state wineries to maintain a physical presence and purchase wine from in-state wholesalers. *Anvar*,

---

[13] On September 27, 2022, Plaintiffs filed an opposition letter (ECF No. 142).
[14] Plaintiffs informed the Court of the same in their July 19, 2023, letter (ECF No. 154).
[15] On October 12, 2022, Plaintiffs filed an opposition letter (ECF No. 144).

2022 WL 4552047, at *2.  The Court may consider *Anvar* as persuasive authority, however, it did not apply *Anvar* to its decision here.

Third, and finally, Plaintiffs inform the Court of proposed "new pertinent authority from the Supreme Court of the United States, *Nat'l Pork Producers Council v. Ross*, 598 U.S. ___,  143  S.  Ct. 1142 (May 11, 2023)."  (ECF No. 148, at 1).[16]  The decision in *Nat'l Pork Producers Council* concerned a California law that barred the sale of whole pork meat from breeding pigs, but neither considered a challenge to California's alcoholic beverage laws nor applied the *Granholm* Test.  *See, gen.,* 143 S. Ct. 1142.  Thus, *Nat'l Pork Producers Council* is not controlling precedent given the distinguishable facts and test applied.

As the Court has articulated the relevant test to be applied, which remains unchanged after review of additional caselaw proposed by the parties, it therefore moves to address the parties' substantive arguments.

### C.   The New Jersey System is a Valid Exercise of the State's Power under the Twenty-first Amendment and is Justified by the Legitimate Nonprotectionist Ground of Promoting Health and Safety that Cannot Be Adequately Served by Reasonable Nondiscriminatory Alternatives

The State of New Jersey, "ha[s] broad power to regulate liquor under § 2 of the Twenty-first Amendment[,]" which includes creating and enforcing a three-tier system.  *Granholm*, 544 U.S. at 493.  Indeed, the New Jersey System supports Congress' intent of allowing states to decide how to administer alcohol distribution within their borders.  *See Granholm*, 544 U.S. at 484 ("The aim of the Twenty-first Amendment was to allow States to maintain an effective and uniform system for controlling liquor by regulating its transportation, importation, and use.").  Accordingly, the Court finds for the reasons more fully set forth below, that the New Jersey System, and the challenged provisions therein, are valid

---

[16] The State Defendants argue that *Nat'l Pork Producers Council* does not apply.  (ECF No. 150), at 1. On June 27, 2023, the Wholesaler Defendants filed a letter generally supporting the State Defendants' arguments.  (ECF No. 152).

exercises of the State's power under the Twenty-first Amendment and are justified by the legitimate nonprotectionist ground of promoting public health and safety, which, on these facts, cannot be adequately served by reasonable nondiscriminatory alternatives.  The Court addresses each in turn.

> 1.   **The New Jersey System is a Valid Exercise of the State's Power Under the Twenty-first Amendment**

The New Jersey System has been in effect since ratification of the Twenty-first Amendment. Sapolnick Decl., at ¶ 4.  The ABC Law, like the laws of many states, established a "three-tier" structure for alcohol distribution and sales.  Therein, the Legislature directed that New Jersey "maintain a three-tier (manufacturer, wholesaler, retailer) distribution system" in part "[t]o strictly regulate alcoholic beverages to protect the health, safety[,] and welfare of" New Jersey's citizens.  N.J.S.A. 33:1-3.1(b)(1), (8).  Under that structure, "producers of alcoholic products, the first tier, sell their products to wholesalers, the second tier, who in turn sell the products to retailers, the third tier." Sapolnick Decl., at ¶ 41.  "[T]o participate in any tier of" the New Jersey System, an entity "must first obtain a license."  *Id.* at ¶ 5.  Potential licensees must also purchase alcoholic beverages from licensed New Jersey wholesalers and maintain a physical presence in the State.  PSOF ¶ 6; WDRSOF ¶ 6; NJLRSOF ¶ 6; SDRSOF ¶¶ 6, 45, 58, 65, 67; PRSOFSD ¶¶ 6, 45, 58, 65, 67; Sapolnick Decl., at ¶ 8; Johnson Dep., at T8:21-23; Sapolnick Dep., at T17:7-9. Whether an in-state or out-of-state wine retailer, the New Jersey System requires that all wine retailers abide by these same provisions.

The United States Supreme Court has held that such a "three-tier system ... is 'unquestionably legitimate.'" *Granholm,* 544 U.S. at 489 (citations omitted).  The Third Circuit Court of Appeals has similarly held.  *See Freeman*, 629 F.3d at 158 ("[T]he three-tier system itself is unquestionably legitimate, and . . . state policies are protected under the Twenty-first Amendment when they treat liquor produced out of state the same as its domestic equivalent.") (citation and internal quotations and brackets omitted). Thus, unless the New Jersey System or a provision therein somehow discriminates against Plaintiff, is

unsupported by concrete evidence of a legitimate local purpose, and without reasonable nondiscriminatory alternatives, it will be upheld.

"Any statute that discriminates against interstate commerce on its face or in effect is thus subject to heightened scrutiny." *Freeman*, 629 F.3d at 158 (citations and internal quotations omitted). "The party challenging the statute has the burden of proving that the statute is discriminatory . . . but if the plaintiff meets that burden, the State must demonstrate (1) that the statute serves a legitimate local interest, and (2) that this purpose could not be served as well by available nondiscriminatory means[.]" *Ibid*. (citations omitted). "If the plaintiff does not meet its burden of showing that the statute is discriminatory, we instead use the balancing test set forth in *Pike v. Bruce Church, Inc.*" to "determine whether the burdens on interstate commerce substantially outweigh[ ] the putative local benefits." *Ibid.* (citations omitted).

Here, the New Jersey System is arguably not "facially discriminatory" because it requires that in-state and out-of-state wine retailers sell and deliver wine through the New Jersey System. *See Freeman*, 629 F.3d at 160 (Statues were "facially discriminatory against interstate commerce" because they allowed only in-state wineries to sell directly to retailers and consumers, thereby "skip[ping]the first two tiers—wholesalers and retailers—while out-of-state wineries must involve both of these tiers in order for their wine to reach consumers.") (internal quotations omitted). Accordingly, the New Jersey System is not facially discriminatory. In respect to Plaintiffs, however, the New Jersey System, is arguably discriminatory in effect because it sets certain conditions precedent to selling wine directly to New Jersey consumers.

To operate under the New Jersey System, Plaintiffs must purchase their wine from licensed New Jersey wholesalers, and choose one of the following to obtain a plenary retail license: (1) open a store in New Jersey and sell its products there; or (2) open a store in New Jersey and sell its products from The Wine Cellarage's New York facility online and "ship it by common carrier" from the New York store to

New Jersey consumers.  SDRSOF ¶¶ 47, 49; PRSOFSD ¶¶ 47, 49; PSOF ¶ 6; WDRSOF ¶ 6; NJLRSOF ¶ 6; SDRSOF ¶ 6.  These requirements are "additional steps that drive up the cost" of Plaintiffs' wine and may be discriminatory.  *Granholm*, 544 U.S. at 474-75.  To invalidate the New Jersey System and/or parts therein, Plaintiffs claim that the discriminatory effect of the New Jersey System is not "justified as a public health or safety measure" and that the State Defendants cannot provide "concrete evidence" that the New Jersey System "actually promotes public health or safety[.]" Tenn. *Wine*, 139 S. Ct. at 2474 (citations omitted).  The Court disagrees.

Plaintiffs concede that the Twenty-first Amendment "gives states wide latitude to decide which methods of selling and delivering alcohol it will permit and which methods it will prohibit because they pose a risk to public health and safety."  Pls.' Mem. of Law, at 1.  Plaintiffs further concede that the Twenty-first Amendment protects the State Defendants' interest of "protecting public health and safety" and "raising revenue."  Pls.' Mem. of Law, at 10.  To counter Defendants' arguments in support of the New Jersey System, Plaintiffs posit that "[f]orty-five states allow some form of direct-to-consumer wine shipping" and that at least 14 "jurisdictions allow" retailers to ship directly to consumers.  PSOF ¶ 26; WDRSOF ¶ 26; NJLRSOF ¶ 26; SDRSOF ¶ 26.  Plaintiffs further posit that alcohol usage among minors has not increased in other states, neither has consumption of wine among adults, nor has there been an occurrence of "higher rates of alcohol-related public safety problems such as traffic fatalities, . . . aggravated assaults, . . . or domestic violence."  Pls. Mem. of Law, at 11.  Further, that states saw no issues with tax collection for remittance of taxes.  *Ibid.*  These factors are not persuasive, however, as to the constitutionality of the New Jersey System.[17]

---

[17] Plaintiffs also contend that the Court should exclude the State Defendants' expert reports.  Pls.' Resp./Reply Br., at pp. 28-33.  Because Plaintiffs did not file a motion to bar pursuant to Federal Rule of Civil Procedure 702, the Court does not opine on Plaintiffs' request here.  Regardless, the Court did not rely on the subject expert reports in rendering its decision here.

2.      **The New Jersey System Advances the Legitimate Local Purpose of Promoting Public Health and Safety that Cannot Be Adequately Served by Reasonable Nondiscriminatory Alternatives**

As part of its cross-motion, the State Defendants provided a Declaration prepared by Deputy Attorney General Andrew R. Sapolnick in support of the New Jersey System and its challenged provisions. Sapolnick Decl., at ¶¶ 1-2.  Mr. Sapolnick argues in pertinent part that due to the New Jersey System, the State Defendants can exercise their oversight prerogatives over licensed premises and protect the public health and safety by requiring licensees to have a New Jersey store and purchase alcoholic beverages from licensed New Jersey wholesalers.  The Court agrees.

First, Mr. Sapolnick states that the New Jersey System's "physical presence requirement" allows the ABC "to conduct its regulatory oversight of alcoholic beverage activity within the State to protect the public health, safety[,] and welfare."  *Id.*, at ¶ 10.  Such a requirement "advances" the "legitimate local purpose" (*see Granholm*, 544 U.S. at 489), of protecting public health and safety because it "ensures that [all] alcohol sold to New Jersey consumers passes through New Jersey's three-tier system."  Sapolnick Decl., at ¶¶ 10-11.  For example, having an in-state physical presence allows the ABC to conduct "random site visits without prior notice to the particular licensee."  *Id.*, at ¶ 16.  Such visits assist in "determin[ing] whether retailers are engaged in illegal sales, such as sales to minors . . . ."  *Id.*, at ¶ 19.  Notably, the New Jersey System's physical presence requirement is not unique to New Jersey.  Indeed, Neubohn admits that The "Wine Cellarage is required to have a premises in New York for licensure."  SDRSOF ¶ 5; Neubohn Dep., at T40:13-17.

Relatedly, unannounced inspections, which are authorized by statute (*see* N.J.S.A. 33:1-35), and ABC investigations of licensees have uncovered undisclosed interests in licensed premises, including by organized crime, and "afford [the] ABC the opportunity to inspect the licensee's contemporaneous records . . . ."  Sapolnick Decl., at ¶¶ 20-21.  Investigations have also "uncovered large sums of unaccounted-for

cash[,]" unlawful acquisition of beverage alcohol from prohibited sources, specifically other than a New Jersey licensed wholesaler[,]" and have led to numerous prosecutions for related violations. *Id.*, at ¶¶ 22-23. Fedway further supports this assertion by describing instances in 2017 and 2018, where "State officials" performed on-site inspections of its warehouse and corporate offices, as well as "trucks and sales personnel when they are on the road." Robert D. Sansone's December 2, 2021, Declaration (ECF No. 112-2).

Second, Mr. Sapolnick states that in requiring out-of-state wine retailers to purchase wine "through an authorized distribution network[,]" the State Defendants may then "identify the source of contamination," should such authority be needed, and "facilitate product recalls and . . . take other prompt action." Sapolnick Decl., at ¶ 13; *see also* Robert Harmelin's December 6, 2021, Declaration (ECF No. 110-2) (the "Harmelin Decl."), at ¶ 12. In 2020 for example, Allied "was asked by [its] supplier to place Kim Crawford in case (Rose and Sauvignon Blanc) with identified production dates on hold because of quality issues; [and,] as requested, Allied segregated its existing inventory of the product within its warehouse and provided specific counts to the supplier . . . ." Harmelin Decl., at ¶ 13.

The record before the Court establishes that the State Defendants' goal of protecting health and safety through these provisions as outlined, cannot be achieved "by reasonable nondiscriminatory alternatives" (*see Granholm*, 544 U.S. at 489), because the ABC's "jurisdiction is limited to New Jersey, [and] it has no practical means by which to conduct warrantless searches and seizures of evidence and property located outside of New Jersey." Sapolnick Decl., at ¶ 24. Indeed, the State Defendants would need to overcome "several obstacles" in working with agencies outside its borders to investigate out-of-state entities selling alcoholic beverages to New Jersey consumers, including "whether specific out-of-state agencies have legislative approval to assist in enforcing New Jersey's alcoholic beverage laws" and whether out-of-state agencies are "able to conduct adequate investigations under the ABC Act[.]" *Ibid.*

This is particularly relevant here because the New York State Liquor Authority (the "NYSLA"), which oversees The Wine Cellarage in New York State, has in the past "refused to assist ABC in regulatory oversight of its licensees." *Id.*, at ¶ 26. In 2018, the NYSLA declined the ABC's request to "obtain the investigation reports, specifications of charges" and "settlement agreement" related to the NYSLA's fine of Wegmans to determine whether the State Defendants "should conduct a similar investigation of Wegmans" in-state. *Ibid.* As a result, exempting Plaintiffs from the New Jersey System "would render it beyond New Jersey's regulatory purview." *Id.*, at ¶ 25.

Plaintiffs contend that the validity of the New Jersey System is not at issue here. *See* Pls.' Resp./Reply Br. at 2 ("This case presents one issue -- the constitutionality of a discriminatory feature of New Jersey's liquor code that prohibits out-of-state retailers from shipping wine to consumers . . . [t]he issue is not the validity of the entire three-tier system . . . ."). Plaintiffs' contention is unavailing given the relief that they seek. *See* Am. Compl. at 7 (Requesting a declaratory judgment that "New Jersey law, practices[,] and regulations that prohibit out-of-state wine retailers from selling, shipping, and delivering wine directly to a New Jersey consumer unconstitutional as a violation of the Commerce Clause" and an "injunction prohibiting Defendants from enforcing those rules and regulations and requiring them to allow out-of-state wine retailers to obtain licenses and to sell, ship, and deliver wine directly to customers in New Jersey."). Veritably, Plaintiffs request to be treated differently—not the same—to in-state wine retailers by seeking to invalidate the licensing, physical presence, and wholesaler wine purchase requirements; and to prohibit the New Jersey System from applying to Plaintiffs. WDSOF ¶ 7; PRSOFWD ¶ 7; SDRSOF ¶ 45; PRSOFSD ¶ 45; Sapolnick Decl., at ¶ 8. The licensing, physical presence, and wholesaler wine purchase requirements go the root of the New Jersey System. Were the Court to grant the relief sought, it would greatly favor out-of-state wine retailers to the disadvantage of in-state wine

retailers who must adhere to New Jersey's three-tier regulations.  This is clearly not what the court in *Granholm* intended.

As stated herein, the New Jersey System does not have different licenses for in-state vs out-of-state wine retailers.  Both are eligible for plenary retail licenses.  Indeed, all potential licensees must satisfy the same requirements, obtain the same licenses, and be subject to the same inspections, audits, and investigations.  In-state wine retailers are not provided special treatment or exemptions from certain aspects of the New Jersey System.  Therefore, the State of New Jersey's goal of "protecting public health and safety" is indeed "achieved through the alternative of an evenhanded licensing requirement" because both in-state and out-of-state wine retailers are subject to the same procedures and requirements to sell wine to New Jersey consumers.  *Granholm*, 544 U.S. at 492.  Accordingly, the "predominant effect" of the challenged provisions is not "protectionism," but "the protection of public health or safety," which, is "shielded by § 2."  *Tenn.* Wine, 139 S. Ct. at 2474.

Moreover, the "reasonable nondiscriminatory alternatives" discussed in *Granholm* would prove "unworkable" here.  *Granholm*, 544 U.S. at 489, 92-93.  In *Granholm*, the court noted that "improvements in technology have eased the burden of monitoring out-of-state wineries" because "[b]ackground checks can be done electronically[,]" [f]inancial records and sales data can be mailed, faxed, or submitted via e-mail."  *Granholm*, 544 U.S. at 492.  While true, technology improvements do not address the State of New Jersey's goal of performing unannounced on-site inspections and investigations.  Indeed, the electronic transmission of materials do not tell the entire story without on-site inspections, unannounced visits, and ABC-led investigations.  And absent the authority to perform such visits in the State of New York, reviewing electronic materials sent from Plaintiffs can neither replace nor substitute the New Jersey System's challenged requirements.  The Court, therefore, finds that the State Defendants have

demonstrated at summary judgment, "based on [the] concrete record evidence," that the State's "nondiscriminatory alternatives will prove unworkable." *Granholm*, 544 U.S. at 492-93.

The Court recognizes that as raised by Plaintiffs, New Jersey provides an out-of-state winery license that allows direct sales to consumers under certain circumstances. N.J.S.A. 33:1-10(2e); *see also* Pls.' Resp./Reply Br. at 20-21. However, because a license is available to an out-of-state entity that is involved in the wine business (wine production), which differs from Plaintiffs' wine business (wine sales and distribution), does not mean that New Jersey must provide similar licenses to out-of-state wine retailers, or that this Court should invalidate the New Jersey System. Indeed, in raising this provision, Plaintiffs do not argue that the New Jersey System treats in-state wine retailers differently than out-of-state wine retailers, but rather that the New Jersey System treats out-of-state wine producers differently than out-of-state wine retailers. This, however, does not offend the dormant Commerce Clause. *See Davis*, 553 U.S. at 337-38 ("The modern law of . . . the dormant Commerce Clause is driven by concern about economic protectionism that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." (citation and internal quotations omitted); *Freeman*, 629 F.3d at 157-58 (The dormant Commerce Clause "prohibits a state from impeding free market forces to shield in-state businesses from out-of-state competition.") (citations omitted). Because the Court must decide whether the New Jersey System treats in-state and out-of-state wine retailers the same and not whether the New Jersey System treats out-of-state wine producers and out-of-state wine retailers the same, N.J.S.A. 33:1-10(2e) does not trigger a dormant Commerce Clause violation.

At its core, the New Jersey System requires in-state and out-of-state wine retailers to play by the same rules. While the New Jersey System arguably discriminates against Plaintiffs in effect because they must open a New Jersey store, purchase wine from licensed New Jersey wholesalers, and obtain a plenary retail license, the State Defendants have shown by "concrete evidence" that this discrimination is justified

because it advances the legitimate local purpose of promoting public health and safety.  Thus, the Court finds that the challenged provisions are "narrowly tailored" to advance the State's goal of promoting public health and safety pursuant to the Twenty-first Amendment, and "actually" does so under the New Jersey System. *Tenn. Wine*, 139 S. Ct. at 2461, 71.  And because the basis for the challenged provisions is not to protect in-state wine retailers from competition from Plaintiffs (*see id.* at 2474), the specific provisions are upheld.  Accordingly, the New Jersey System, on this record, is valid and upheld.   And thus, the State Defendants are entitled to judgment as a matter of law on their cross-motion on this issue.

## IV.   <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs' motion for summary judgment (ECF No. 102) is **DENIED**, Allied Defendants' cross-motion for summary judgment (ECF Nos. 110-11) is **DENIED as moot**, Fedway's cross-motion for summary judgment (ECF No. 112) is **DENIED as moot**, the State Defendants' cross-motion for summary judgment (ECF No. 114) is **GRANTED**, and Plaintiffs' Commerce Clause claim (Count One) against the State Defendants is **DISMISSED *with prejudice***.  The Court does not award costs, expenses, or attorneys' fees to any party.

An appropriate Order accompanies this Opinion.

s/ Julien Xavier Neals

DATED: 8/22/2023                                        **JULIEN XAVIER NEALS**
                                                        United States District Judge